# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **BOBBY W. STAPLETON**, | ) |
| Plaintiff, | ) Case No. 2:06CV00053 |
| v. | ) **OPINION** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY**, | ) By: James P. Jones<br>) Chief United States District Judge |
| Defendant. | ) |

*Sue Ella Kobak, Pennington Gap, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, and Michael McGaughran, Regional Chief Counsel, and Anne von Scheven, Assistant Regional Counsel, Region III, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Bobby W. Stapleton filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2007) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Id.*

The plaintiff filed an application for DIB on September 2, 2003, alleging an onset date of disability as of June 30, 2002, due to seizures, anxiety disorder, and alcoholism. (R. at 45-47, 55.) The claim was denied initially on February 19, 2004, and a request for hearing was filed on April 1, 2004. On March 17, 2006, a hearing was held before an administrative law judge ("ALJ"). The plaintiff was present and testified. (R. at 348-69.) By motion of the plaintiff's attorney, the onset date of disability was amended to March 1, 2004. (R. at 352.) By decision dated April 13, 2006, the ALJ found that the plaintiff's alcoholism was a contributing factor material to a finding of disability. Accordingly, the plaintiff was deemed ineligible for DIB. The Social Security Administration's Appeals Council denied review on August 9,

2006, and the ALJ's opinion constitutes the final decision of the Commissioner. On September 15, 2006, the plaintiff filed a complaint in this court objecting to the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The plaintiff was forty-seven years old at the time of the ALJ's decision. Although the plaintiff failed to complete the twelfth grade of high school, he has the equivalency of a high school diploma, which he gained through adult education classes. (R. at 197.) He has past work experience in welding. (R. at 56.)

The plaintiff's medical records are filled with ailments linked to years of heavy and consistent alcohol abuse. On June 30, 2002, the plaintiff was hospitalized after complaints of seizures. (R. at 143.) While hospitalized, the plaintiff was diagnosed with acute alcohol withdrawal, alcoholic hepatitis, thrombocytopenia, hypokalemia, hypophosphatemia, and seizures. (R. at 143-48.) During a psychiatric consultation, the plaintiff revealed that he had undergone multiple inpatient and outpatient treatments for detoxification from alcohol. (R. at 152.)

-3-

On July 13, 2002, the record indicates that Dr. M. Ayad concluded that the plaintiff had no physical limitations; however, he noted that the plaintiff was restricted from driving for six months. (R. at 344.)

On September 19, 2002, the plaintiff sought emergency medical care for intoxication. (R. at 161.) The plaintiff's blood alcohol level was at 0.25 percent, and he was diagnosed with acute intoxication. (R. at 161-63.) Though currently prescribed Paxil, the plaintiff stated he had not taken the medication. (R. at 161.) The plaintiff also admitted to drinking heavily and stated that he typically drinks two pints of hard liquor daily. (*Id.*)

On April 20, 2003, the plaintiff sought emergency medical treatment for seizure activity. (R. at 167.) He was diagnosed with alcohol withdrawal seizures. (R. at 167-68.)

On September 19, 2003, the plaintiff was hospitalized after complaining of acute alcohol poisoning. (R. at 182.) The plaintiff admitted to being a heavy drinker, and he stated that he drinks approximately one pint to one-fifth of alcohol each day and had been doing so for many years. (*Id.*) On December 18, 2003 the plaintiff was admitted to the hospital for mental status changes secondary to alcohol and alcohol abuse. (R. at 201.) He was discharged on December 20, 2003 and admonished to stop using alcohol. (*Id.*)

The plaintiff was treated on an intermittent basis by Thomas M. Pinson, D.O., at City Medical, P.C., from July 2002 to July 2005. During this course of treatment, the plaintiff was consistently diagnosed with alcoholism, seizure disorder, and anxiety. (R. at 121-51, 255-309.) On May 9, 2003, the plaintiff was diagnosed with alcohol withdrawal, seizures, anxiety, and depression. (R. at 237.) The plaintiff was noted to have been crying during the examination. (*Id.*)

Medical records from City Medical show that the plaintiff had been forgetting to take his seizure medication in August of 2004. (R. at 285.) On October 27, 2004, the plaintiff returned to City Medical for treatment. He reported that he had last had a seizure one week earlier after forgetting to take his medicine. (R. at 269.) In March 2005, the plaintiff experienced a seizure after failing to take his seizure medication. (R. at 260.) Records from this visit indicate that the plaintiff was non-complaint with his seizure medications. (*Id.*)

On November 30, 2004, the plaintiff was referred by Dr. Pinson to Jonathan Fellows, D.O., a neurologist, for a neurologic consultation of his seizures. (R. at 318-320.) He reported that he had had a seizure one and one-half weeks prior to the consultation because of medication non-compliance. (*Id.*) Dr. Fellows felt seizure precautions were in order for the plaintiff and recommended that he not drive a car until he had been seizure-free for six months, that he not swim or bathe unsupervised,

and that he not climb any heights. (R. at 320.) A Computed Axial Tomography ("CAT") scan of the brain was normal. (R. at 318.) A neurological examination showed intact reasoning and judgment, normal sensory and cerebellar examinations, and full strength at 5/5 in the upper and lower extremities. (R. at 319.)

On December 14, 2004, the plaintiff underwent a electroencephalogram ("EEG") after referral from Dr. Fellows. (R. at 327.) The EEG recording revealed no focal features or epileptiform activity. Dr. Fellows determined the EEG was normal. (*Id.*)

On February 17, 2004, Carl Dobias, a medical examiner, reviewed the medical and other evidence and concluded that the plaintiff had no exertional limitations from his impairments. (R. at 135-42.)

On September 29, 2004, S. Shafinia D.O., examined the plaintiff and determined that he was unable to perform his job due to anxiety and seizure episodes. (R. at 252-54.)

On February 3, 2005, Dr. Pinson completed a Multiple Impairment Questionnaire. Dr. Pinson diagnosed the plaintiff as having a seizure disorder, anxiety, depression, and insomnia. (R. at 310.)

On January 11, 2006, Marissa Vito Cruz, M.D., began treating the plaintiff at Stone Mountain Health Services. (R. at 335.) In particular, the plaintiff sought new

-6-

prescriptions for medications that had expired after his move to Virginia. The plaintiff denied any history of smoking or alcohol or drug use. (*Id.*) On February 1, 2006, the plaintiff returned to Dr. Cruz for treatment. He reported that he had had one seizure after his last visit. (R. at 334.) Dr. Cruz noted that when the plaintiff was observed from a window at a distance, he did not seem to be as nervous as he had appeared during the examination or when others were watching him, and suggested that his condition could be due to nerves or malingering. (R. at 333.)

In addition to emergency care sought at hospitals and treatment from primary care physicians for his alcoholism, seizures, and anxiety, the plaintiff was also evaluated by Sung-Ran Cho, M.D., a consultative psychiatrist. He was evaluated on November 12, 2003. (R. at 196-200.) The plaintiff reported no alcohol consumption for ten days. (R. at 197.) He stated that he had started drinking at the age of fourteen and had been drinking heavily all his life. (*Id*.) He also reported that when he takes Valium and Phenobarbital he does not need to drink as much. (*Id*.) A mental status examination revealed gross tremors of his hands and tearfulness, but he spoke in a normal tone of voice and was coherent. (R. at 198.) The plaintiff was diagnosed with alcohol abuse, chronic, in active use; history of polysubstance abuse in remission; dysthymic disorder; cirrhosis of the liver; alcohol related seizure disorder; physical

problems resulting from long-term alcoholism; and a Global Assessment of Functioning ("GAF") score of forty-five to fifty. (R. at 199.)

In February 2004, Ron Kriauciunas, Ph.D., a state agency reviewing psychologist, determined that the plaintiff's affective disorder and substance addiction disorder resulted in mild restriction of activities of daily living and moderate difficulties in maintaining concentration, persistence, or pace. (R. at 117-27.) In a mental residual functional capacity assessment, Dr. Kriauciunas concluded that the plaintiff had, at most, moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, maintain socially appropriate behavior, and respond appropriately to changes in the work setting. (R. at 131-33.)

On February 8, 2006, the plaintiff was treated at Frontier Health by Dr. Syed Ashan. (R. at 328-332.) A mental status examination showed that the plaintiff suffered from anxiousness and mild depression. The plaintiff denied using alcohol after July 2005. (R. at 328.)

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The Commissioner applies a five-step sequential evaluation process when assessing an applicant's disability claim. The Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2006). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See* § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

In order to prevail, the plaintiff must show he is unable to return to his past relevant work because of his impairments. However, simply showing an inability to perform past relevant work is not enough to prevail. The plaintiff's claim may be defeated if the Commissioner is able to establish that the plaintiff retains the functional ability, considering his age, education, work experience, and impairments to perform alternative work that exists in significant numbers in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (2006).

The ALJ determined in this case that the plaintiff's impairments were severe enough to be considered disabling. (R. at 23.) However, the ALJ then considered the role that alcohol played in producing the plaintiff's impairments.

"An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C) (2006). "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a) (2006).

After reviewing the plaintiff's medical records the ALJ found that the plaintiff's "alcohol abuse is material to disability in this case, as the claimant would not be disabled based on his other impairments if he stopped using alcohol." (R. at 23.) In reaching this conclusion, the ALJ partially disregarded Dr. Pinson's opinion that the plaintiff's seizures were unrelated to alcohol abuse. The plaintiff first contends that there is a lack of substantial evidence in the record to support the ALJ's

-10-

decision denying his claim because the ALJ improperly rejected part of Dr. Pinson's findings.[1]

The decision of the ALJ must be affirmed where there is substantial evidence to support such a decision. *Laws*, 368 F.2d at 642. In determining whether substantial evidence supports the Commissioner's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether he sufficiently explained his findings and his rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Under 20 C.F.R. § 404.1527 (2006), a treating physician's opinion is entitled to more weight than the opinion of a non-treating physician, but it is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[1] The plaintiff has submitted additional evidence he refers to as Exhibit 1, Exhibit B, and Exhibit C. These exhibits purport to establish a link between the occupation of welding and manganese poisoning. However, this evidence was not presented to the ALJ nor was it submitted to the Appeals Council. The plaintiff advances no reason for its late submission nor does he suggest that there is a reasonable probability that this evidence would have changed the outcome of the proceeding before the ALJ. *See* 42 U.S.C.A. § 405(g). Generally, evidence not submitted to the ALJ may not be used as a ground to attack the ALJ's decision as being unsupported by substantial evidence. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Under circuit precedent, this court is restricted to the administrative record when considering whether substantial evidence supported the Commissioner's decision. *See Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 94 (4 th Cir. 1991). Accordingly, I will not consider these exhibits as part of my review of this case.

evidence in [the] record." *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.")

The ALJ is required to consider a number of factors when determining the weight to give to the treating physician's opinion, such as the scope and frequency of any examining relationship; the length, nature and extent of the treatment; the objective evidence supporting the opinion; and the opinion's consistency with the medical records as a whole. *See* 20 C.F.R. § § 404.1527(e)(2)-(e)(3), 416.927(d)(1)-(6) (2006). A treating physician's opinion should only be afforded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case. *See* 20 C.F.R. § 404.1527(d)(2) (2006).

The ALJ rejected the assessment of the treating physician because the limitation he placed on the plaintiff was based on the plaintiff's subjective complaints and was inconsistent with the medical records as a whole. (R. at 23.) A CAT scan taken of the plaintiff's brain was normal. (R. at 318.) A neurological examination showed intact reasoning and judgment, normal sensory and cerebellar examinations, and full strength at 5/5 in the upper and lower extremities. (R. at 319.) Furthermore, an EEG recording revealed no focal features or epileptiform activity. Dr. Fellows

-12-

determined the EEG was normal. (*Id.*) Additionally, the medical records also indicate that the plaintiff often suffered from seizures because he was non-complaint with his seizure medication or that his seizures occurred in conjunction with withdrawal symptoms from alcohol.

Here, the plaintiff claims that Dr. Pinson's records fail to reflect any alcohol abuse on his part after April 1, 2004 and that despite abstaining from alcohol he continued to experience seizures, depression, and anxiety. However, Dr. Pinson's records document alcohol use by the plaintiff in February 2004 (R. at 302), August 2004 (R. at 285), September 2004 (R. at 279, 282,) and February 2005. (R. at 262.) Furthermore, the plaintiff admitted to Dr. Ashan that he had been using alcohol as late as July of 2005. (R. at 328.) The ALJ noted in his decision that during the hearing he observed the plaintiff having tremors that were possibly related to withdrawal symptoms. (R. at 23.) *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.")

The record also indicated that the plaintiff had a long history of alcoholism in which he sought emergency medical treatment for severe alcohol withdrawal symptoms or for acute alcohol poisoning. The ALJ was also entitled to reject Dr.

-13-

Pinson's opinion that the defendant's seizure disorder was unconnected to his alcohol abuse because there were no diagnostic findings to indicate any seizure activity on the part of the plaintiff, the CAT scan of the plaintiff's brain was deemed to be normal, the EEG was normal, and the plaintiff's admission that he continued to use alcohol as late as July of 2005. Based on the record, the ALJ was entitled to disregard the opinion of Dr. Pinson as it stood in conflict with substantial evidence in the record that the defendant's impairments were tied to alcohol abuse. The burden rests with the plaintiff to show he is entitled to disability benefits. Considering this, the plaintiff's medical records are completely absent of any evidence that reflects his seizure disorder and anxiety were unrelated to the alcohol abuse and non-compliance with his regime of anti-seizure medication. The court's role is not to re-weigh the evidence. Rather, the court must evaluate whether there was substantial evidence on which ALJ could base his decision. As the record reflects, it was proper for the ALJ to disregard Dr. Pinson's opinion and there was substantial evidence to support the ALJ's finding in this case.

IV

The plaintiff next argues that the ALJ erred in failing to obtain vocational expert testimony. However, this was not required because the ALJ determined in the

-14-

evaluation process that the plaintiff was not disabled because he retained the ability to perform his past work. (R. at 24.) *See* 20 C.F.R. § 404.1520(a)(4) (2006).

The plaintiff additionally argues that the ALJ erred in failing to obtain medical expert testimony regarding the severity of his impairments and his limitations. The ALJ is not required by regulation or statute to have such an expert present to testify. The regulations authorize, but do not mandate, an ALJ to request and consider opinions from medical experts in determining whether a claimant's impairments equal those of any listed impairment. 20 C.F.R. § 404.1527(f)(2)(iii) (2006); *see also* § 416.927(f)(2)(iii) (2006) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equal the requirement of any impairment listed . . . .").

Finally, the plaintiff argues that the ALJ misrepresented the record by stating that it did not reflect that the plaintiff had stopped abusing alcohol. The record does affirmatively show that the plaintiff repeatedly admitted consuming large quantities of alcohol on a daily basis and that he was diagnosed as suffering from alcoholism. Although the plaintiff contends he stopped abusing alcohol after April 1, 2004, Dr. Pinson's records document that the plaintiff used alcohol after that date. (R. at 262, 279, 282, 285). Moreover, the plaintiff directly admitted that he used alcohol as late as July of 2005. (R. at 328.) Therefore, it was not improper for the ALJ to state that

the record failed to demonstrate that the plaintiff had stopped abusing alcohol. Aside from the plaintiff's subjective reports, nothing in the record indicates that the plaintiff stopped abusing alcohol as claimed.

V

For the foregoing reasons, the plaintiff's motion for summary judgment will be denied, and the defendant's motion for summary will be granted.

An appropriate final judgment will be entered.

DATED: July 3, 2007

/s/ JAMES P. JONES
Chief United States District Judge